**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EZZIE CHARLES JOHNSON** | : | **CIVIL ACTION NO. 3:22-1920** |
| **Petitioner** | : | |
| | : | **(JUDGE MANNION)** |
| **v.** | : | |
| **MELINDA ADAMS,** | : | |
| **Respondent** | : | |

### MEMORANDUM

Presently before the Court is *pro se* Petitioner Ezzie Charles Johnson's ("Johnson" or "Petitioner") instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, seeking relief from the Judgment of Sentence entered on January 5, 2021, in the Court of Common Pleas of Centre County Criminal Division at CP-14-CR-0001386-2019, following conviction of two counts of possession with intent to deliver, under 35 Pa. Stat. §780-113(a)(30). (Doc. 1). Johnson seeks relief upon a single ground, that the police allegedly violated his Fourth Amendment right when the police executed a warrantless search of the residence he occupied under police-contrived exigent circumstances.

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1994 ("AEDPA"), will be denied.

## I.    State Court Factual and Procedural Background

The relevant facts set forth below are extracted from the Superior Court of Pennsylvania's November 15, 2021, decision considering the Petitioner's singular issue on appeal of whether the trial court erred in denying Petitioner's Motion to Suppress based upon the warrantless entry and search of the residence absent exigent circumstances (*Commonwealth v. Johnson*, No. 110 MDA 2021 (Pa. Super. 2021)):

> Detective Donald Paul ("Detective Paul") is employed by the State College Police Department Criminal Investigations Division, Drug Enforcement Section. On October 2, 2019, Detective Paul was conducting surveillance of [Petitioner's] residence located at 215 E. Logan Street, along with Detective Chris Federinko ("Detective Federinko"), Trooper Ryan Maggs ("Trooper Maggs"), and Trooper Trevor Danko ("Trooper Danko").

> The Commonwealth alleges knowledge of [Petitioner's] address was acquired following a hearing wherein the Honorable Katherine V. Oliver issued a bench warrant for one of [Petitioner's] alleged co-conspirators, Dana Walk ("Walk"), said warrant listing 215 E. Logan St. Bellefonte, PA as Walk's

- 2 -

residence. Walk's warrant was issued due to alleged probation violations, including the use of controlled substances.

"Based on previous surveillance and tips from a known informant," the above law enforcement personnel began surveillance of [Petitioner's] residence at approximately 10:30 a.m. for drug-related activity. The previous surveillance revealed [Petitioner] delivering controlled substances from the local Ramada Inn in August of 2019.

Walk [also] lived at the residence on Logan Street in Bellefonte with her then boyfriend, Jeff Spicer ("Spicer"). Detective Paul saw Walk and another individual, Ricky Vannoy ("Vannoy"), enter the residence at approximately 12:11 p.m. While conducting surveillance, multiple individuals were seen coming and going from the residence and speaking with [Petitioner] on the porch, their behavior noted as being consistent with drug dealing activity.

One such individual was later identified as Kylie Smith ("Smith"), whom Detective Paul decided to follow until she parked in order to make contact with her. When Detective Paul approached Smith, she was getting out of her vehicle while speaking on her cell phone. Detective Paul identified himself [specifically stating he was from Drug Enforcement] and asked if he could speak with Smith, to which she agreed and hung up her

phone.[1] Smith later confirmed she was speaking with Spicer on her cell phone when she was approached by Detective Paul.

During their conversation, Smith admitted to purchasing methamphetamine from individuals within the residence on Logan Street. Smith told Detective Paul that Spicer was currently traveling out of state. Spicer sent a text message to Smith during her interaction with Detective Paul which read, "You good hun?" Smith later allowed Detective Paul and the other officers [to] take photographs of her text messages with Spicer involving her purchase of methamphetamine within the residence. Detective Paul asked for permission to search the vehicle and Smith consented. During his search, Detective Paul discovered a small plastic bag of crystal meth in Smith's wallet and alerted the other officers.

---

[1] This factual point was contested by the Petitioner who alleged that Smith "parked her car, got out began to walk towards an apartment building while she was speaking to someone on her cellphone. She was in the process of ending the call, when she noticed Det. Don Paul trying to get her attention. She was caught off guard but aggreed [sic] to speak to the detective. At the police station, Kylie Smith supplied a written statement and also testified at the [Petitioner's] suppression hearing that … 'She had hung up her phone before Don Paul introduce himself as a cop…' Then when questioned on the stand if she believed that the person she was speaking to heard the police introduce himself she stated no." (Doc. 7, p. 2). This Court will accredit the factual determination made by the trial court, which weighed all the evidence and testimony provided at the suppression hearing on January 16, 2020. (*See generally, Commonwealth v. Johnson*, No. CP-14-CR-1396-2019, Court of Common Pleas of Centre County, Penn. Criminal Action Opinion and Order (June 2, 2020)).

Detective Paul provided testimony indicating concern regarding the remaining occupants of the residence becoming aware of the police officer presence and the [potential for] destruction of evidence. Based on his concern, Detective Paul directed the other officers to secure the residence while he made the application for a search warrant.

Corporal McGuire and Trooper Danko approached the residence in full uniform and saw an individual standing in the doorway. Trooper Danko testified to stating, "Hey, I need to talk to you," as he approached the front door of the residence. At that time, the individual, who was confirmed via radio to be [Petitioner], attempted to run back inside the residence and close the doors on the officers. The officers and [Petitioner] struggled at the door until Trooper Maggs assisted the officers in pushing it open.

After pushing the door back open, the officers could visibly see drugs under the couch and on the coffee table in the living room. A protective sweep was conducted. Trooper Maggs testified to clearing the residence and detaining the individuals inside. Detective Paul testified the entry into the home was in order to secure the residence and prevent the destruction of evidence. Detective Paul obtained a warrant to search the residence following the protective sweep.

The Affidavit of Probable Cause for the search warrant stated, "Based upon your affiant's experience, training and all of

the circumstances of this case, it is believed that probable cause exists to search the residence based upon the following … (4) additional drugs were observed in plain view on the coffee table in the residence." Methamphetamine, heroin, fentanyl, marijuana and pills were found within the residence. Smith provided conflicting statements as to who handed her the methamphetamine.

*Id.* at *1-2 (quoting the Suppression Court Opinion, *see infra* n. 1) (except for this Court changing the term "Appellant" for "Petitioner," all other modifications were made by the Superior Court). As a result of the police investigation and search of the residence, Petitioner was arrested and charged with 15 crimes. On December 16, 2019, Petitioner filed a motion to suppress, challenging the warrantless entry into the residence. The court held a hearing on January 16, 2020, and on June 2, 2020, it issued an opinion and order denying the motion, finding that exigent circumstances existed making the warrantless entry into the residence reasonable. Following an October 1, 2020 bench trial, the court having reviewed, among other things, the suppression hearing transcript, the drug identification report, Smith's written statement and photographs taken at the residence showing the heroin and methamphetamine on the coffee table inside the residence, convicted Petitioner of two counts of possession with intent to

deliver.[2] On January 5, 2021, the court sentenced Petitioner to an aggregate 7 to 14 years of incarceration.

Petitioner then filed a notice of appeal to the Pennsylvania Superior Court on January 19, 2021, raising a singular issue on appeal, whether the trial court erred in denying Petitioner's Motion to Suppress based upon the warrantless entry and search of the residence absent exigent circumstances. The Pennsylvania Superior Court affirmed Petitioner's conviction by opinion and order dated November 15, 2021, finding that exigent circumstances existed justifying the warrantless entry and that the police did not create the exigencies in question. *Commonwealth v. Johnson*, No. 110 MDA 2021 at *10-15 (Pa. Super. 2021).

Petitioner then filed for allowance of appeal to the Pennsylvania Supreme Court on December 13, 2021, which was denied on June 24, 2022. (*See* Doc. 16-1, Appx. J and K). Petitioner has exhausted all state remedies for the sole claim presented and now comes before this Court.

---

[2] Counts 1-4 and 7-15 were dismissed by Commonwealth's decision to discontinue the prosecution of such counts. *Commonwealth v. Johnson*, No. 110 MDA 2021 at *3 (Pa. Super. 2021).

## II.    Legal Standard

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

As mentioned in the introduction, Petitioner's case is governed by the AEDPA and "because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted),

"[t]his is a difficult to meet and highly deferential standard ... which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted). Thus, the burden is on Petitioner to prove entitlement to the writ. *Id.*

## III.    Discussion

Petitioner claims that the police violated his rights under the Fourth Amendment of the U.S. Constitution and the Pennsylvania Constitution to be free from unreasonable searches and seizures. *See* U.S. Const. amnd. IV and XIV; Pa. Const. Art. I. §8. In particular, Petitioner claims that the trial court's, as well as the Pennsylvania Superior Court's, findings of exigent circumstances was "contrary to, or involving an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (Doc. 20, pp. 7-8). The Court disagrees.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As that text makes clear, "the ultimate touchstone of the Fourth Amendment is

'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "That standard 'generally requires the obtaining of a judicial warrant' before a law enforcement officer can enter a home without permission." *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). "But not always: The 'warrant requirement is subject to certain exceptions.'" *Id.* (quoting *Brigham City*, 547 U.S., at 403).

One important exception is for exigent circumstances. It applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (internal quotation marks omitted). "The exception enables law enforcement officers to handle 'emergenc[ies]'—situations presenting a 'compelling need for official action and no time to secure a warrant.' *Lange*, 594 U.S. at 301 (quoting *Riley*, 573 U.S., at 402). Over the years, the Supreme Court has identified several such exigencies. An officer, for example, may "enter a home without a warrant to render emergency assistance to an injured occupant[,] to protect an occupant from imminent injury," or to ensure his own safety. *Brigham City*, 547 U.S., at 403. So too, the police may make a warrantless entry to "prevent the imminent destruction of evidence" or to "prevent a suspect's escape." *Brigham City*, 547 U.S., at 403; *Minnesota v. Olson*, 495 U.S. 91, 100 (1990) (internal

quotation marks omitted). "In those circumstances, the delay required to obtain a warrant would bring about 'some real immediate and serious consequences'—and so the absence of a warrant is excused." *Lange*, 594 U.S. at 302 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984)).

The Supreme court has determined that cases applying the exigent-circumstances exception must do so on a "case-by-case basis." *Lange*, 594 U.S. at 302 (citing *Birchfield v. North Dakota*, 579 U.S. 438 (2016)). The exception "requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id.* (citing *Riley*, 573 U.S. at 402). "Or put more curtly, the exception is 'case-specific.' *Id.* "That approach reflects the nature of emergencies. Whether a 'now or never situation' actually exists—whether an officer has 'no time to secure a warrant'—depends upon facts on the ground." *Id.* The court must review the totality of circumstances confronting the officer as he decides to make a warrantless entry. *Id.*

Here, Petitioner does not challenge the exception found to the warrantless search as a matter of law but as a matter of fact. Petitioner argues that the trial court's determination of exigent circumstances was unreasonable because there was contradictory testimony offered by Detective Paul and Smith at the suppression hearing making it "unclear when

[Smith] hung up her phone"—whether it was before or after Detective Paul identified himself. (Doc. 20, p. 11). If it was unclear, he argues, then the exigent circumstances found of curtailing the imminent destruction of evidence and protecting the officers' safety was based on mere speculation; insufficient to justify a warrantless search. (*Id.,* pp. 11-12). Beyond that, Petitioner argues that even if the exigent circumstances were reasonably found, such circumstances were nevertheless contrived by the Detective when he chose to forego applying for a search warrant and asked the other officers to secure the residence, effectively creating the exigent circumstances he needed to make his warrantless search. (*Id.*). The Court will address each of these arguments in turn.

### a. **The Trial Court's Factual Determination**

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). Petitioner's first argument pertains to the second exception.

The test for §2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," §2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See Rice v. Collins*, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Cullen*, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

- 14 -

Applying the above legal principles and having reviewed the trial records, this Court finds that the trial court's factual determination of sufficient exigent circumstances was reasonable, and Petitioner has failed to meet his burden to rebut the presumption afforded to the trial court's determination. An exigency arose the moment Detective Paul introduced himself to Smith as part of Drug Enforcement while she was still on the phone with Spicer, the owner of the residence. After Smith hung up the phone, a real possibility existed that Spicer would become suspicious and alert the occupants of his residence that the police were on their tail. Such a possibility was made even more probable when Smith received a text from Spicer asking if she was "good." With no response from Smith, Spicer would likely grow more suspicious and inform his co-conspirators that their activity had been discovered by the police who were on their way, creating a potential for his co-conspirators to either flee or destroy evidence. Under those reasonable beliefs, Detective Paul asked the other members of his team to secure the residence while he applied for a warrant. *Commonwealth v. Ariondo*, 397 Pa. Super. 364, 580 A.2d 341, 346 (Pa. Super. 1990) ("Normally, a reasonable belief by police that evidence is likely to be destroyed will give rise to exigent circumstances sufficient to justify a warrantless entry into a private residence.") (citing *United States v. Rubin*, 474 F.2d 262 (3d Cir. 1973)).

Then, Corporal McGuire and Trooper Danko approached the residence in full uniform and saw Petitioner standing in the doorway. Danko approached the front door and upon stating, "Hey, I need to talk to you," Petitioner attempted to run back inside the residence and close the doors on the officers. Under those circumstances, the officers reasonably believed that Petitioner would have sought to flee or destroy evidence. *See id.* The officers and Petitioner struggled at the door until Trooper Maggs assisted the officers in pushing it open and making an entry.

All of the above events were testified to by multiple members of law enforcement and Ms. Smith at the Suppression Hearing, which the trial court relied upon when deciding on the facts. Granted, Ms. Smith's and Detective Paul's testimonies did not perfectly align. However, it is the province of the trial court, as factfinder, to pass upon the credibility of witnesses and the weight to be accorded the evidence produced at the suppression hearing and trial. The factfinder is free to believe all, part or none of the evidence when making its final determination. "28 U.S.C. §2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Indeed, "the assessment of the credibility of witnesses is generally beyond the scope of review."

*Schlup v. Delo*, 513 U.S. 298, 330 (1995). The proper question is not whether the witnesses were credible, but "whether there is sufficient evidence which, if credited, could support the conviction." *Id.* This Court finds that there is. Moreover, the determination of a factual issue is presumed to be correct, 28 U.S.C. §2254(e)(1), and Petitioner has failed to present any clear and convincing evidence to overturn that presumption. Accordingly, Defendant's first argument that his claim resulted in a decision that was based on an unreasonable determination of the facts is without merit.

### b. <u>Validity of the Exigent Circumstances</u>

Petitioner's second argument is that his claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States because his case is "the mirror image of a few cases in which relief was granted and illegal[ly] obtained evidence was suppressed" where the exigent circumstances were contrived by the police. (Doc. 7, p. 3). As explained above, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1).

Under 28 U.S.C. §2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The test for §2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)).

Here, Petitioner paradoxically provides this court with Pennsylvania state court precedents (*Commonwealth v. Mason*, 535 Pa. 560 (Pa. 1993), *Commonwealth v. Melendez*, 544 Pa. 323 (Pa. 1995), and *Commonwealth v. Waddell*, 61 A.3d 198 (Pa. Super. Ct. 2012)) and circuit court precedents (*U.S. v. Coles*, 437 F.3d 361 (3d Cir. 2006), *U.S. v. Santa*, 236 F.3d 662 (11th Cir. 2000), and *U.S. v. Ramirez*, 676 F.3d 756 (8th Cir. 2012)) to argue that the decision in his matter resulted in "an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1); *see Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (3d Cir. 2016) ("A state court decision is "contrary to" clearly established federal law if the state court … (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different' from that reached by the Supreme Court.") (quoting *Williams*, 529 U.S. at 405–06). In those cases, Petitioner argues, those courts were faced with a similar set of facts and decided against finding exigent circumstances because such circumstances were contrived by the police. Unfortunately for Mr. Johnson, those cases are inapplicable and factually distinguishable.

Beginning with *Coles*, the Third Circuit held that exigent circumstances fail to meet Fourth Amendment standards if the government deliberately created the exigency. 437 F.3d at 366. However, the factual situation in *Coles* was unique and materially different from the case before this Court. In *Coles*, the government had a hotel room under covert surveillance because it believed the occupants were engaged in the illegal drug trade. *Id.* at 362–64. Law enforcement surreptitiously entered the room, with help from a hotel employee, and observed suspected drugs and related paraphernalia. *Id.* Such an entry was illegal, and the police exited the room waiting on the

occupants to return. *Id.* Thereafter, police observed two men entering the room, at least one of whom carried a backpack. *Id.* The officers then attempted to enter the room through subterfuge by claiming they were "room service" and then "maintenance to fix a reported leak." *Id.* at 363. It was only after these failed attempts that the police identified themselves. *Id.* The Third Circuit found these facts disturbing stating that the record reveals "no urgency or need for the officers to take immediate action." *Id.* at 371. The exigency "did not arise naturally or from reasonable police investigative tactics." *Id.* Instead, law enforcement deliberately created the exigency by demanding entry. *Id.*

In the case before this Court, the facts show that the local law enforcement was dealing with a fluid situation quite differently than in *Coles*. The exigent circumstances here did not arise the moment Corporal McGuire and Trooper Danko approached the residence but earlier when Detective Paul identified himself while Smith was on the call with Spicer. The Detective's ensuing suspicion that Spicer may communicate with the occupants of the Logan Street residence to alert them of the police's investigation arose naturally and from reasonable police investigative tactics—unlike the developing circumstances in *Coles*. Afterwards, when asked to secure the residence, Corporal McGuire and Trooper Danko

approached the residence in full uniform at which point Petitioner attempted to flee into the residence to destroy evidence—which is at odds with *Coles* whereby the defendant in that matter did not detect law enforcement surveillance until the police knocked on his door. Also, importantly, the facts in this matter clearly demonstrate that the local police were acting reasonably and observing proper investigative tactics leading up to their warrantless entry. Since law enforcement acted reasonably, this Court finds that they did not create the exigent circumstances and the exigencies of the situation warranted intrusion into the residence. *See King*, 563 U.S. at 463-64 ("Fourth Amendment requires only the steps preceding the seizure be lawful" and that courts must look to "objective factors, rather than subjective intent" to determine exigency.).

In *Santa*, the agents set up a sting operation whereby an informant was to purchase drugs from the Defendant. 236 F.3d at 669. After a sample was tested the Defendant offered to arrange an additional sale at his home. *Id.* Once the informant confirmed the presence of the drugs, the agents entered Defendant's home without a warrant contending later that they had done so to "prevent the destruction of evidence and [a suspect's] escape." *Id.* The court held that exigent circumstances were not sufficient because the suspects had no knowledge that they were under police surveillance and

therefore no situation arose for a warrantless search. *Id.* Additionally, the court found it unlikely that danger of flight or destruction of drugs existed when the suspects had no reason to believe that they were under police surveillance. *Id.* "[The defendant's] in home arrest may not be justified on the basis of exigent circumstances or created by the Government itself." *Id.* at 676. These facts are distinguishable from the case at hand where the police had a reasonable suspicion that the occupants of the East Logan Street residence would be alerted of the investigation from naturally arising circumstances that developed as the police were conducting their investigation.

In *Santa*, the Eleventh Circuit recognized that the government had as much as two days' notice that a drug transaction would occur at Santa's Miami apartment. *Id.* at 665. On the day of Santa's arrest, agents were notified that the transaction would take place at the apartment of Santa and Ramirez. The C.I. accompanied them at 4:50 pm to their residence, while they awaited the supplier, Gallego, to arrive. At 6:50 pm Gallego arrived and made an exchange with Ramirez outside the unit. Ramirez returned to the apartment carrying a white plastic bag. Minutes later the C.I. emerged from the apartment and gave the concealed agents a prearranged signal that the heroin was in the apartment. Within 30 seconds of receiving the signal

agents moved in on the apartment. At no time did the agents seek to obtain a search warrant even with advance knowledge of the site where the exchange would occur. The Eleventh Circuit Court was unpersuaded by the government's contention that a delay in the C.I.'s return to the apartment would have caused Ramirez to grow suspicious as time went on. The court also noted that the entry occurred only seconds after the signal was given and there was no basis for predicting when Ramirez might have grown concerned. This is far from a mirror image of the matter at hand, where Detective Paul had a reasonable suspicion that the occupants of East Logan Street would have been alerted of the police investigation, sought a warrant, and asked members of his team to secure the residence until Petitioner elected to flee into his residence at the sight of the uniformed officers which necessitated a warrantless entry.

In *Ramirez*, the Eighth Circuit reversed a district court's finding that exigent circumstances justified officers' warrantless entry into a hotel room. 676 F.3d at 765. The officers in *Ramirez*, first attempted, without any evidence of exigency whatsoever, to enter the defendant's room with a key card, and then forced entry when the defendant "attempt[ed] to shut the door" on their announcement they were police. *Id.* at 762. "[W]ithout more," the Eighth Circuit concluded, merely shutting the door "[did] not bolster the claim

that it was reasonable to conclude that the destruction of evidence was imminent." *Id.* But *Ramirez* is simply inapposite here. When Detective Paul identified himself to Smith while she was on a call with Spicer, he had reasonable cause to suspect that Spicer would alert his co-conspirators of the police's investigation. Detective Paul asked the other members of his team to secure the residence and Petitioner responded to their arrival, not by declining to speak as in *Ramirez*, but by suddenly and forcefully attempting to flee into the residence and slam the door on the officers leading to a struggle at the door—thus creating a circumstance in which any reasonable, experienced officer would see an urgent need to take action. Even worse, *Ramirez* does not help Petitioner's police-contrived exigent circumstances argument because the Eighth Circuit specifically refused to explore the question of police created exigencies. *Id.* at 765 ("Because we find no exigent circumstances here, we need not determine whether the officers in this case 'created' any exigency, which itself would have necessarily precluded the warrantless entry.").

In *Mason*, the case is factually inapposite. In that case, while waiting for a warrant, one of the police officers decided to enter the residence in question even though there was no indication that the residents were aware of the police's presence. 535 Pa. at 563. This fact pattern is different than in

Petitioner's case where the police reasonably believed that a co-conspirator (Spicer) may have become aware of the police's closing investigation and warned his co-conspirators to quickly destroy evidence. Furthermore, unlike Trooper Danko who was dressed in full police uniform when he approached Petitioner, the police officer in *Mason* never identified himself as police but posed as a maintenance man to surreptitiously enter the residence and, failing to do so, opted to use a battering ram to enter the apartment. *Id.* None of this occurred in Petitioner's case. The Pennsylvania Supreme found it "beyond the bounds of constitutionally acceptable police conduct" to "batter[ ] down doors without a warrant or exigent circumstances…." *Id.* at 571. Lastly, the Pennsylvania Supreme Court explained at great length that the *Mason* ruling was based on its interpretation of Pennsylvania's, not the federal's, exclusionary rule. *Id.* at 569-571 ("The history of Article I, Section 8, thus indicates that the purpose underlying the exclusionary rule in this Commonwealth is quite distinct from the purpose underlying the exclusionary rule under the 4th Amendment). The *Mason* court indicated that if they applied the Supreme Court's interpretation of the 4th Amendment as expressed in *Leon v. United States*, 468 U.S. 897 (1984) "to deter police misconduct," the *Mason* court would have admitted the seized evidence. *Id.* ("If our sole purpose in applying Article I, Section 8 [of the Constitution of

Pennsylvania] to the facts of this case were to deter police misconduct, we would be constrained to rule in favor of the Commonwealth…").

In *Melendez*, the police stopped and searched Defendant Melendez, transported her back to her house and used her keys to gain entrance into her residence without a search warrant because she merely left a house that was under investigation for possible drug dealing activity. 544 Pa. at 326. "Melendez was not engaged in any activity at the time she was stopped which would cause a person of reasonable suspicion that she was then engaged in criminal conduct," yet the police stopped her and searched her residence without a warrant because, the police argued, delaying Melendez "to arrive at her destination at a particular time or within a particular period could well have set in motion, by pre-arrangement among the conspirators or by happenstance, circumstances which her co-defendant would have viewed as so untoward as to necessitate destruction or removal of contraband from the scene." *Id.* at 328-330. These are not the exigent circumstances found in this matter. Rather, Detective Paul's reasonable suspicion that the occupants of the East Logan Street residence may be alerted of the police's investigation was not based on Smith's delay in arriving to her destination but on the real possibility that Spicer may have overheard the Detective identify himself while Spicer was on the call with Smith.

- 26 -

Furthermore, Petitioner hurriedly began to escape into the residence to destroy evidence when he saw uniformed officers approach him. The facts of this case and the *Melendez* case do not "mirror" each other at all. Moreover, the *Melendez* court concluded "that the items seized and introduced into evidence must be suppressed under Art. I, Sec. 8 of the Pennsylvania Constitution," not the Fourth Amendment of the United States Constitution. *Id.* at 331; *see also* 28 U.S.C. §2254(d)(1) ("contrary to, or involved an unreasonable application of, clearly established *Federal law*, as determined by the *Supreme Court of the United States*…") (emphasis added).

In *Waddell*, the Homestead Borough Police Department received a tip conveyed by a neighboring police department that large quantities of marijuana were being distributed from a house in the Borough. 61 A.3d at 208. That tip was confirmed by another informant, and based upon information the informant disclosed, an arrest was made of individuals transporting 13 pounds of marijuana from the house. *Id.* Four officers then proceeded to the house to perform a "knock and talk." *Id.* at 209. The officers detected the odor of marijuana in the vicinity of the house, which grew stronger as they approached. *Id.* The officers knocked three times at the door with no response, but they heard "slight movement" inside, which grew

louder after the third knock. *Id.* An officer posted at the rear of the residence then observed the defendant attempting to jump out of a rear window, radioing this information to the officers at the front of the house. *Id.* Upon learning of the attempted escape, the officers at the front of the house kicked the front door open and entered the house, discovering two firearms and ten pounds of marijuana in plain view in the residence. *Id.* at 209-10.

The *Waddell* court rejected the claim of exigent circumstances based upon a concern of potential destruction of evidence or a danger to the safety of the officers. While the court acknowledged that the officers had probable cause to conduct a search once they detected the smell of raw marijuana emanating from the house, the court distinguished the facts from other cases where the police were in hot pursuit of a felon who retreated into a residence, noting that the residents of the house appeared to be unaware of the police activity before they knocked on the door. *Id.* at 215; *cf. Commonwealth v. Bostick*, 958 A.2d 543, 557-58 (Pa. Super. 2008) (exigent circumstances found where individual opened front door that was targeted for drug operation, saw an arrest in progress, uttered an expletive, and retreated inside, tossing items in vestibule in an apparent effort to conceal evidence); *Commonwealth v. Griffin*, 785 A.2d 501, 506 (Pa. Super. 2001) (suspect fleeing police into residence and displaying handgun during his retreat

contributed to finding of exigent circumstances). In those cited to cases, which the *Waddell* court found the exigent circumstances necessitated a warrantless entry, "common to each of those cases was the fact that a suspect had spotted and immediately attempted to evade police by fleeing into a residence, creating an immediate risk that an attempt to destroy evidence was impending." *Id.* at 214. This is exactly what occurred in this matter when Petitioner saw Corporal McGuire and Trooper Danko approach the residence in full uniform and attempted to run back inside the residence to close the door on the officers and destroy evidence. *See id.* at 217 ("Also common to [cases where exigent circumstances necessitated a warrantless entry] were facts that the appellants in those cases had observed the presence of police and reacted by retreating into the residences that were ultimately searched."). Thus, not only are the facts distinguishable in the *Waddell* case, but the Waddell holding also appears to undermine Petitioner's argument.

All in all, Petitioner has cited to the above inapplicable decisions but has failed to acknowledge the direct applicability of the seminal Supreme Court decision in *Kentucky v. King*, 563 U.S. 452 (2011) to his case. In *King*, the police had set up a controlled buy of crack cocaine outside an apartment complex. *Id.* at 455. An undercover officer watched the transaction occur and

then radioed uniformed officers to move in on the suspect. *Id.* at 456. The officers were unable to stop the suspect before he entered an apartment. *Id.* Police did not see which of two apartments in the vicinity the suspect entered but smelled the odor of marijuana emanating from one of the apartment doors (from the apartment the suspect did <u>not</u> enter). *Id.* One of the uniformed officers knocked loudly on the door and announced the presence of the police. *Id.* That officer maintained that he could hear the sound of things being moved inside and testified that he "believe[d] that drug-related evidence was about to be destroyed." *Id.* Thereafter, the officers kicked down the door and were able to see marijuana and powder cocaine in plain view. *Id.* at 457.

The Kentucky Supreme Court ruled that the police improperly created their own exigency in violation of the Fourth Amendment. *King*, 563 U.S. at 457-458. The United States Supreme Court granted *certiorari* to consider whether the exigent circumstances rule applies "when police, by knocking on the door of a residence and announcing their presence, cause the occupants to attempt to destroy evidence." *Id.* at 461-462. This question goes to the essence of Petitioner's second argument, that Detective Paul created the exigency by identifying himself when he "approach[ed] [Smith] in the way he did, while she was clearly on her cellphone" and by the officers who identified

themselves when they approached Petitioner in full uniform, all of which led to Petitioner's attempt to run back inside the residence and close the door on the police. (Doc. 20, pp. 12, 14). The Supreme Court was not persuaded by such an argument in *King* and deemed the "conten[tion] that law enforcement officers impermissibly create an exigency when they engage in conduct that would cause a reasonable person to believe that entry is imminent and inevitable" as flawed. *King*, 563 U.S. at 468 (internal quotation marks removed).[3] The *King* Court emphasized the "Fourth Amendment requires only the steps preceding the seizure be lawful" and that courts must look to "objective factors, rather than subjective intent" to determine exigency. *Id.* at 463–64. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen do.

---

[3] Petitioner argues that *King* is inapposite because the facts are distinguishable from his case, namely that (1) the police in that matter had prior "knowledge from a C.I. that drugs were in the residence;" (2) the police were in pursuit of the defendant; and (3) the police in his matter were attempting to secure the residence and not conduct a "knock and talk" as in *King*. (Doc. 20, pp. 14-15). Petitioner is incorrect on all three points. First, the police in *King* did not have any prior knowledge regarding the residence of Hollis King because they were chasing after an unknown suspect who ran into a different apartment. Second, the police in *King* were not in pursuit of Hollis King but of an unknown suspect who, again, ran into a different apartment. Third, just as the officers in *King* who knocked on the apartment door to talk to the occupants, the police in this matter approached Petitioner in full uniform asking him "Hey, I need to talk to you."

And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak…. Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent circumstances that may ensue." *Id.* at 469-479.

Here, the exigencies that necessitated a warrantless entry began when Detective Paul had a reasonable suspicion that Spicer may alert his co-conspirators of the police investigation and ended when Petitioner elected to flee into the residence for which the police reasonably believed was an attempt to destroy evidence. *See Id.* at 461 ("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain."). Accordingly, Petitioner's second argument will be denied.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Doc. 1) will be **DENIED**. An appropriate order will issue.


<u>s/ Malachy E. Mannion</u>
**MALACHY E. MANNION**
**United States District Judge**

**Dated: December 17, 2024**
22-1920-01

- 33 -